# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RECO WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18−cv–0498−SMY |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| UTILIZATION MANAGEMENT UNIT, ) | |
| RITZ, ) | |
| GARCIA, ) | |
| REDNOUR, ) | |
| K. BUTLER, ) | |
| B. NWASBASI, ) | |
| J. TROST, ) | |
| M. MOLDENHAUER, and ) | |
| GAIL WALLS ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Reco Wilson, an inmate at Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that occurred at Menard Correctional Center ("Menard"). Plaintiff money requests damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

1

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### **The Complaint**

In March 2011, Plaintiff developed a small, painful lump over his spine, and began to seek medical treatment. (Doc. 1, p. 4). He saw Dr. Nwasbasi on June 22, 2011. *Id*. Dr. Nwasbasi thought the lump might be a lipoma; he prescribed Motrin and scheduled a follow-up visit within 2 months. (Doc. 1, p. 5).

Plaintiff had a follow-up visit with Dr. Nwasbasi on August 25, 2011, during which Dr. Nwasbasi noted that the lump had not increased in size. *Id*. Plaintiff alleges Dr. Nwasbasi should have conducted tests to determine if the lump was cancerous or surgically removed the lump, but Dr. Nwasbasi refused to do either. *Id*. Plaintiff submitted an emergency grievance to

Defendant Rednour on August 29, 2011, but Rednour did not acknowledge or respond to the grievance. *Id*. The lump caused Plaintiff constant pain and continued to grow. (Doc. 1, p. 6).

Plaintiff saw Dr. Moldenhauer for the lump sometime after November 21, 2014, and Dr. Moldenhauer refused to order an MRI. *Id*. Instead, he referred Plaintiff to Dr. Trost. *Id*.

Dr. Trost saw Plaintiff on December 15, 2014. (Doc. 1, p. 7). He also refused to schedule an MRI for Plaintiff. *Id*. Plaintiff submitted an emergency grievance regarding Dr. Trost's refusal to Defendant Butler on December 18, 2014. *Id*. Butler did not respond or acknowledge the grievance. *Id*. Plaintiff filed a second emergency grievance with the same result. (Doc. 1, p. 8).

Plaintiff next sought care for his lump from non-defendant Tindall on January 3, 2016. *Id.*

Plaintiff received an x-ray of his thoracic and lumbar spine on January 11, 2017, and an ultrasound on February 14, 2017. *Id*. Non-defendant Dr. Siddiqui referred Plaintiff for an MRI, but Ritz denied the referral on April 11, 2017, in favor of a conservative treatment plan of monitoring, analgesics, and activity modification. (Doc. 1, pp. 8-9).

Dr. Siddiqui re-submitted Plaintiff for an MRI on May 4, 2017, but Defendant Garcia denied the referral. (Doc. 1, p. 9). Plaintiff alleges that Defendant Walls made the final decision to approve or deny treatment in both instances. *Id*. Plaintiff ultimately received an MRI sometime in 2017, and his lump was removed on November 9, 2017. (Doc. 1, p. 10).

Plaintiff alleges that Wexford has a practice of delaying and/or preventing adequate medical treatment and care to prisoners by making medication the preferred course of treatment, even when it proves ineffective, that Wexford has a policy of delaying and/or preventing access to outside medical providers, and that Wexford fails to adequately train their employees or

implement effective policies and procedures. (Doc. 1, pp. 10-11). Plaintiff claims that he was denied adequate medical treatment for 6 years as a result of Wexford's policies. (Doc. 1, p. 11).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 2 Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1** – Ritz, Garcia, Rednour, Butler, Nwasbasi, Trost, Moldenhauer, and Walls were deliberately indifferent to the lump on Plaintiff's back in violation of the Eighth Amendment;
>
> **Count 2** – Wexford had policies and/or practices in place to deny Plaintiff needed health care for his lump in violation of the Eighth Amendment.

## Count 1

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the

4

inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

At this early pleading stage, the lump/cyst on Plaintiff's back, which was ultimately surgically removed, constitutes a serious medical need. Also, because Plaintiff has made a credible allegation that the defendants persisted in a course of treatment that did not offer relief from his pain for 6 years, he has adequately pleaded a deliberate indifference claim under the Eighth Amendment. Count 1 will therefore be permitted to proceed.

## Count 2

As to Plaintiff's claims against Wexford, the rules for naming a private corporation are different. Normally, a private corporation is shielded from vicarious liability under § 1983. However, Wexford is presumed to act under color of state law, and is thus treated as though it were a municipal entity. *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002).

To state a claim against a municipality, a plaintiff must demonstrate that the wrongdoers acted pursuant to an unconstitutional policy or custom, *Whiting v. Wexford Health Sources*, *Inc.*,

839 F.3d 658, 664 (7th Cir. 2016); *Shields v. Ill Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 780 & n. 5 (7th Cir. 2015), and that the policy was the moving force behind the constitutional violation. *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)). A policy claim can include implicit policies or gaps in explicit policies. *Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016).

Here, Plaintiff alleges the delays in his care are attributable to a Wexford policy of preferring conservative treatment options over referrals to outside specialists. Therefore, Plaintiff's claims against Wexford in Count 2 will also be permitted to proceed.

### Defendants Subject to Dismissal

Despite the survival of Counts 1 and 2, the inclusion of certain defendants is problematic. First, Plaintiff has named the utilization management unit of Wexford as an independent defendant. A division of a corporation is not a "person" for the purposes of § 1983. Moreover, including it as a defendant would be cumulative and duplicative because the suit is proceeding against Wexford, the parent organization. As such, Defendant "utilization management unit" will be dismissed from the case with prejudice.

Plaintiff's Complaint also has statute of limitations issues. Although typically, affirmative defenses such as the statute of limitations are litigated by after service of the Complaint (*see Jones v. Bock*, 549 U.S. 199, 212 (2007)), the Court may invoke these defenses on § 1915A review when the availability of the defense is apparent on the face of the Complaint. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

6

Statutes of limitation for §1983 claims are governed by the law of the state where the alleged violation occurred. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001)(citing *Wilson v. Garcia*, 471 U.S. 261. 276 (1985)). In Illinois, the limitations period for such claims is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). However the Court is also bound to apply a state's tolling rules, and in Illinois, 735 ILCS 5/13-216 tolls the limitation period while a prisoner completes the administrative grievance process. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008); *Johnson*, 272 F.3d at 521. The statute is only tolled while the prisoner exhausts his administrative remedies; it is not tolled during the time period between the injury and the start of the administrative remedy process. *Santiago v. Snyder*, 211 F. App'x 478, 480 (7th Cir. 2006) (rejecting plaintiff's argument that he was entitled for 8 more months of tolling to account for the time between his injury and his grievance when he was allegedly pursuing informal remedies).

Plaintiff claims that his course of medical care constitutes a continuing wrong, and thus, the statute of limitations did not begin to run until he had surgery. Under the continuing violation doctrine, a violation keeps accruing for so long as it continues to happen. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001); *see also Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). This is true for the defendants that have been continuously involved in treating Plaintiff's condition from 2011 through 2017.

However, the receipt of medical treatment is not the only event that starts the statute of limitations running. For instance, if a defendant loses the ability to address the plaintiff's condition, the claim immediately accrues as to that person. *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013) (finding suit was untimely as to defendant where defendant retired 3 weeks

before prisoner received adequate treatment and prisoner did not bring suit until 2 years after treatment date).

Here it is clear from the face of the Complaint that Defendant Rednour left his position as Warden of Menard more than 2 years prior to the initiation of the lawsuit; the statute of limitations has run as to any claims against him. Plaintiff alleges that Kimberly Butler was Warden of Menard as of December 18, 2014, when he sent her an emergency grievance as Chief Administrative Officer. Even assuming that Rednour was Warden up until December 17, 2014,[1] Plaintiff would have had until December 17, 2016 to bring suit against him. Plaintiff did not file this action until February 26, 2018, more than a year later. Because Plaintiff's Complaint suggests that Rednour was no longer in a position to address his complaints by December 18, 2014 at the latest, the Complaint as to him is untimely. It is possible that the Complaint is untimely as to other defendants as well, but the Court cannot make that determination from the face of the Complaint.

For the above reasons, Plaintiff's claim against Defendant Rednour will be dismissed with prejudice as barred by the statute of limitations.

**Pending Motions**

Plaintiff's Motion for Recruitment of Counsel is referred to a United States Magistrate Judge for disposition. (Doc. 3).

**Disposition**

**IT IS HEREBY ORDERED** that **Counts 1-2** survive threshold review against Defendants Ritz, Garcia, Butler, Nwasbasi, Trost, Moldenhauer, Walls, and Wexford,

---

[1] Media sources suggest that he left his position much earlier. First Woman Named as Warden of Menard Prison in Chester, St. Louis Post-Dispatch, http://www.stltoday.com/news/local/crime-and-courts/first-woman-named-as-warden-of-menard-prison-in-chester/article_77160af1-d843-59fa-9eab-2f6d3fa99165.html (last accessed May 29, 2018)

respectively. Defendant "utilization management unit" is **DISMISSED with prejudice** as not a "person" within the meaning of § 1983. Defendant Rednour is **DIMISSED with prejudice** because the claims against him are barred by the statute of limitations.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Wexford, Ritz, Garcia, Butler, Nwasbasi, Trost, Moldenhauer, and Walls: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 11, 2018**

s/ STACI M. YANDLE

**U.S. District Judge**
